# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
June 2, 2016 Session[1]


## MS. BOWEN EX REL. JOHN DOE, "N" v. WILLIAM E. ARNOLD, JR. ET AL.


### Appeal by Permission from the Court of Appeals
### Circuit Court for Davidson County
### No. 11C1425          Hamilton V. Gayden, Jr., Judge

_____

### No. M2015-00762-SC-R11-CV – Filed September 29, 2016
_____


The determinative question in this appeal is whether the trial court erred in ruling that a person convicted of rape and aggravated sexual battery is collaterally estopped in a subsequent civil lawsuit filed by the victim of the criminal offenses from relitigating the issue of whether he raped and sexually battered the victim. The trial court applied collateral estoppel, explaining that, although the victim was not a party to the criminal prosecution, the victim was in privity with the State, which satisfied the party mutuality requirement necessary for collateral estoppel to apply. The trial court therefore granted the plaintiffs partial summary judgment but permitted the defendant to seek an interlocutory appeal pursuant to Tennessee Rule of Appellate Procedure 9. After the Court of Appeals declined to accept the interlocutory appeal, the defendant filed an application for permission to appeal in this Court, which we granted. We hereby abolish the strict party mutuality requirement for offensive and defensive collateral estoppel and adopt sections 29 and 85 of the Restatement (Second) of Judgments as the guidelines for courts to follow when determining whether nonmutual collateral estoppel applies. Having applied these guidelines to the undisputed facts in this appeal, we affirm the trial court's decision granting partial summary judgment to the plaintiffs and remand this matter to the trial court for further proceedings consistent with this decision.


### Tenn. R. App. P. 11 Appeal by Permission;
### Judgment of the Trial Court Affirmed

---

[1] Oral arguments were heard on June 2, 2016, on the campus of Lipscomb University in Nashville, Tennessee, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

CORNELIA A. CLARK, J., delivered the opinion of the court, in which SHARON G. LEE, C.J., and JEFFREY S. BIVINS, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.

Gary M. Kellar and Lance W. Thompson, Nashville, Tennessee, for the appellant, William Edward Arnold.

Luvell L. Glanton and Herron T. Bond, Nashville, Tennessee, for the appellees, Ms. Bowen and John Doe N.


## OPINION

### I. Factual Background[2]

In November 2010, a minor child, herein referred to as "John Doe N," reported to his mother, Ms. Bowen,[3] that William E. Arnold, Jr. had been raping and molesting him for about eighteen months. Mr. Arnold was the child's mentor in a mentorship program offered by the Boys and Girls Clubs of Middle Tennessee, in partnership with Big Brothers Big Sisters of Tennessee. The Metropolitan Nashville Police Department investigated the report, and on June 17, 2011, a Davidson County Grand Jury indicted Mr. Arnold on three counts of aggravated sexual battery and three counts of rape of a child.

Mr. Arnold's criminal trial commenced on July 8, 2013. John Doe N testified extensively and was cross-examined by counsel for Mr. Arnold. At the conclusion of the proof at trial, the trial court granted a motion for judgment of acquittal on two of the counts of aggravated sexual battery. On July 12, 2013, the jury returned a verdict finding Mr. Arnold guilty of the remaining count of aggravated sexual battery and of the three counts of rape of a child. State v. Arnold, No. M2014-00075-CCA-R3-CD, 2015 WL 99272, at *1 (Tenn. Crim. App. Jan. 7, 2015). Following his conviction, Mr. Arnold appealed to the Court of Criminal Appeals, challenging the trial court's denial of the motion for judgment of acquittal as to the counts for which he was found guilty, the

---

[2] This is an interlocutory appeal in a civil case which has not been tried; thus, the following facts are gleaned from the documents included in the record on appeal. Additionally, the only parties to this interlocutory appeal are Ms. Bowen, John Doe N, and Mr. Arnold. Although the technical record reflects that much pretrial litigation has occurred involving the entity defendants, including an appeal and appellate reversal of an order granting summary judgment to Big Brothers Big Sisters of America and an agreed order of voluntary dismissal of the Boys and Girls Clubs of Middle Tennessee, these proceedings are not relevant to the issue in this appeal. This opinion summarizes only the pleadings and trial court rulings pertinent to the issue and parties in this appeal.

[3] We refer to Ms. Bowen and John Doe N collectively as "Ms. Bowen." Additionally, to protect John Doe N's privacy, this opinion and the public case history use only Ms. Bowen's surname.

denial of the motion for new trial, and the trial court's ruling on the admissibility of evidence under Tennessee Rule of Evidence 412. Id. On January 7, 2015, the Court of Criminal Appeals rejected these arguments and affirmed Mr. Arnold's convictions. Id. On May 15, 2015, this Court denied Mr. Arnold's application for permission to appeal. State v. Arnold, No. M2014-00075-SC-R11-CD (Tenn. May 15, 2015) (order denying Tennessee Rule of Appellate Procedure 11 application and designating the Court of Criminal Appeals' opinion as not for citation pursuant to Tennessee Supreme Court Rule 4, section E).

While the criminal proceeding made its way through the courts, this separate civil lawsuit, filed April 8, 2011, two months before Mr. Arnold's indictment, remained pending in the Circuit Court for Davidson County. The lawsuit, filed by Ms. Bowen "individually and on behalf of" John Doe N, named Mr. Arnold as a defendant, along with the Boys and Girls Clubs of Middle Tennessee, the Boys and Girls Clubs of America, Big Brothers Big Sisters of Tennessee, and Big Brothers Big Sisters of America. Ms. Bowen alleged that Mr. Arnold intentionally molested John Doe N and that the entity defendants were negligent in various ways. Ms. Bowen sought compensatory damages from the defendants of three-and-one-half million dollars.[4]

On January 12, 2015, one week after the Court of Criminal Appeals affirmed Mr. Arnold's convictions, Ms. Bowen moved for partial summary judgment against Mr. Arnold, arguing, based on his criminal convictions, that he was collaterally estopped from relitigating in the civil lawsuit the issue of "whether he raped and sexually battered" John Doe N. In his response in opposition to the motion, Mr. Arnold argued that collateral estoppel did not apply because criminal and civil trials are "wholly separate and distinct proceedings" and involve different parties, interests, procedural rules, and witnesses. Mr. Arnold supported his response with an affidavit, in which he professed innocence of the crimes, stated that he had been falsely accused and wrongfully convicted, and declared that he would continue to maintain his innocence of the crimes.[5] He also argued that one of the elements necessary for application of the collateral estoppel doctrine—party mutuality—was lacking because John Doe N was neither a party to the criminal prosecution nor in privity with the State of Tennessee in the criminal prosecution.

---

[4] The allegations summarized in this opinion are those contained in a document titled "Third Amended Complaint," which was filed on December 16, 2011. This document actually was the second amended complaint.

[5] Ms. Bowen and John Doe N filed a response to Mr. Arnold's response, and Mr. Arnold subsequently filed a reply to their response. Both the response and the reply simply reiterated and clarified the positions articulated in the initial motion and response.

On April 16, 2015, the trial court entered an order granting Ms. Bowen's motion for partial summary judgment against Mr. Arnold. The trial court concluded that all elements of the collateral estoppel had been established, and with respect to party mutuality, found that John Doe N was "in privity with the State of Tennessee from the criminal case." The trial court therefore ruled that collateral estoppel precluded Mr. Arnold "from raising the issue of whether he raped and sexually battered" John Doe N in the civil lawsuit. By this same order the trial court granted Mr. Arnold permission to seek an interlocutory appeal, Tenn. R. App. P. 9, and stayed further proceedings in the trial court pending final disposition of the interlocutory appeal. On May 26, 2015, the Court of Appeals denied Mr. Arnold's request for an interlocutory appeal. Mr. Arnold then timely filed an application for permission to appeal in this Court. Tenn. R. App. P. 9(c), 11. We granted the application and set oral arguments at the Girls' State S.C.A.L.E.S. project.

## II. Standard of Review

The issue in this appeal—whether collateral estoppel applies—is a question of law. Mullins v. State, 294 S.W.3d 529, 535 (Tenn. 2009). Thus, summary judgment is an appropriate vehicle for resolving the issue. Id. (citing 18 James Wm. Moore et al., Moore's Federal Practice and Procedure § 132.05[7] (3d ed. 2009)). The party relying upon collateral estoppel as a bar bears the burden of proof on the issue. Id.; see also State v. Scarbrough, 181 S.W.3d 650, 655 (Tenn. 2005).

An appellate court reviews a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. Rye v. Women's Care Ctr. of Memphis, MPLLC, 477 S.W.3d 235, 250 (Tenn. 2015) (citing Abshure v. Methodist Healthcare-Memphis Hosp., 325 S.W.3d 98, 103 (Tenn. 2010); Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997)). This review requires the appellate court to make "a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." Id. (citing Estate of Brown, 402 S.W.3d 193, 198 (Tenn. 2013)). Under Rule 56, summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

## III. Analysis

### A. Collateral Estoppel Overview

Collateral estoppel is an issue-preclusion doctrine developed by the courts. Mullins, 294 S.W.3d at 534 (citing Kremer v. Chem. Constr. Corp., 456 U.S. 461, 480

(1982); Morris v. Esmark Apparel, Inc., 832 S.W.2d 563, 565 (Tenn. Ct. App. 1991)).[6] This doctrine "promotes finality, conserves judicial resources, and prevents inconsistent decisions," id. (citing Allen v. McCurry, 449 U.S. 90, 94 (1980); Gibson v. Trant, 58 S.W.3d 103, 113 (Tenn. 2001); State ex rel. Cihlar v. Crawford, 39 S.W.3d 172, 178 (Tenn. Ct. App. 2000)), by barring "the same parties or their privies from relitigating in a later proceeding legal or factual issues that were actually raised and necessarily determined in an earlier proceeding," id. at 534-35 (citing Barnett v. Milan Seating Sys., 215 S.W.3d 828, 835 (Tenn. 2007) superseded by statute on other grounds as recognized in Freeman v. Gen. Motors Co., No. M2011-02284-SC-WCM-WC, 2012 WL 5197672, at *5 n.3 (Tenn. Workers' Comp. Panel Oct. 22, 2012); Massengill v. Scott, 738 S.W.2d 629, 631-32 (Tenn. 1987); Blue Diamond Coal Co. v. Holland–Am. Ins. Co., 671 S.W.2d 829, 832 (Tenn. 1984)); see also Restatement (Second) of Judgments § 27 (1982) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."). To prevail on a claim of collateral estoppel, a party must establish:

> (1) that the issue to be precluded is identical to an issue decided in an earlier proceeding, (2) that the issue to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding, (3) that the judgment in the earlier proceeding has become final, (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding, and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded.

Mullins, 294 S.W.3d at 535 (emphasis added).

There are two general categories of collateral estoppel—defensive and offensive. Trinity Indus., Inc. v. McKinnon Bridge Co., 77 S.W.3d 159, 184-85 (Tenn. Ct. App. 2001). Defensive collateral estoppel refers to a defendant seeking to prevent a plaintiff from relitigating an issue that the plaintiff has previously litigated and lost. Id.; see also Scarbrough, 181 S.W.3d at 655; Beaty v. McGraw, 15 S.W.3d 819, 824 (Tenn. Ct. App. 1998). Offensive collateral estoppel refers to a plaintiff attempting to prevent a defendant from relitigating an issue that the defendant has previously litigated and lost. Gibson, 58 S.W.3d at 118 (citing Beaty, 15 S.W.3d at 824-25).

---

[6] Res judicata and collateral estoppel are related doctrines. Res judicata bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit. Collateral estoppel bars a second suit between the same parties and their privies on a different cause of action only as to issues which were actually litigated and determined in the former suit. Goeke v. Woods, 777 S.W.2d 347, 349 (Tenn. 1989); Massengill v. Scott, 738 S.W.2d 629, 631 (Tenn. 1987).

At early common law, only defensive collateral estoppel was available, <u>Beaty</u>, 15 S.W.3d at 825, and the scope of the collateral estoppel doctrine was limited by the party mutuality requirement, which meant that a prior judgment would be given preclusive effect only if both parties had also been parties to the prior proceeding or in privity with a party to the prior proceeding, <u>Parklane Hosiery Co. v. Shore</u>, 439 U.S. 322, 326-27 (1979); <u>Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.</u>, 402 U.S. 313, 320-21 (1971); <u>see also</u> Restatement (First) of Judgments § 93 (1942) (describing the mutuality requirement).  Almost from its inception, however, the mutuality requirement was sharply criticized by both judges and scholars because it allowed a party to relitigate an issue against another defendant even though that same party had already once litigated and lost on the issue.  <u>Parklane Hosiery Co.</u>, 439 U.S. at 327; <u>Blonder-Tongue Labs., Inc.</u>, 402 U.S. at 322.  In fact, the mutuality requirement was so much disfavored that, in the same year it was included in the Restatement (First) of Judgments, the California Supreme Court unanimously rejected it, finding "no compelling reason" for requiring a party asserting collateral estoppel to "have been a party, or in privity with a party, to the earlier litigation."  <u>Bernhard v. Bank of Am. Nat. Trust & Sav. Assn.</u>, 122 P.2d 892, 894 (Cal. 1942).

Twenty years later, the California Supreme Court also abandoned the traditional rule under which criminal convictions were deemed irrelevant for collateral estoppel purposes in subsequent civil actions.[7]  In doing so, California's high court provided the

---

[7] According to one commentator:

> The traditional rule was that [a prior criminal] conviction was irrelevant in any subsequent civil action.  This rule gave way to decisions that permitted the conviction to be offered in evidence.  In most courts, evidentiary use of the conviction has been transformed into preclusion, although some courts still resist preclusion.  This transformation has occurred despite partial appreciation of the dangers being courted.  It is common to recognize that conviction should not support issue preclusion if there was little incentive to defend vigorously, particularly if the prosecution was for a trivial offense.  The fear that preclusion will encourage perjury by witnesses interested in private litigation or diminish their credibility has been put aside.  So too, a leading decision has rejected the argument that a criminal defendant should be free to determine whether to take the stand or offer any defense solely as a matter of criminal trial strategy and without fear of collateral preclusion consequences in later civil litigation.  Less attention has been paid to the substantial differences in procedure that may hamper a criminal defendant as well as the prosecution.  Third-party discovery, for example, is severely limited in federal prosecutions; if issue preclusion did not short-circuit the process, a very different trial record might be presented in a civil action. Taken together, these concerns might justify a flexible and substantially discretionary application of issue preclusion following a criminal conviction.  The federal cases, however, have not gone in this direction.

18B Charles Allen Wright & Arthur R. Miller, <u>Federal Practice & Procedure</u> § 4474 (2d ed. 2016) (footnotes omitted); <u>see also</u> <u>Chantangco v. Abaroa</u>, 218 U.S. 476, 481 (1910) (stating that "[t]he general

following concise and cogent rationale for why criminal judgments should be given collateral estoppel effect in subsequent civil actions:

> To preclude a civil litigant from relitigating an issue previously found against him in a criminal prosecution is less severe than to preclude him from relitigating such an issue in successive civil trials, for there are rigorous safeguards against unjust conviction, including the requirements of proof beyond a reasonable doubt and of a unanimous verdict, the right to counsel, and a record paid for by the state on appeal. Stability of judgments and expeditious trials are served and no injustice done, when criminal defendants are estopped from relitigating issues determined in conformity with these safeguards.

Teitelbaum Furs, Inc. v. Dominion Ins. Co., 375 P.2d 439, 441 (Cal. 1962) (citations omitted); see also Hopps v. Utica Mut. Ins. Co., 506 A.2d 294, 297 (N.H. 1985) ("[T]here is a stronger rationale for applying collateral estoppel against a former criminal defendant than for applying it against a party to a prior civil case, since the criminal defendant has had the benefit of the presumption of innocence and the State's obligation to prove any fact essential to the conviction beyond a reasonable doubt."). Moreover, "despite [a party's] assertion that he is actually innocent of the crime for which he was convicted, unless and until his conviction is overturned, it is deemed valid and is entitled to preclusive effect under the collateral estoppel doctrine." Stewart v. Bader, 907 A.2d 931, 941 (N.H. 2006).

In the wake of these California Supreme Court decisions, "[m]any state and federal courts rejected the mutuality requirement, especially where the prior judgment was invoked defensively in a second action against a plaintiff bringing suit on an issue he litigated and lost as plaintiff in a prior action." Blonder-Tongue Labs., Inc., 402 U.S. at 324 (footnote omitted). And, twenty-nine years after California rejected the mutuality requirement, the United States Supreme Court did as well, eliminating it for defensive collateral estoppel. Id. at 350. Although the Supreme Court limited its decision in Blonder-Tongue Laboratories to defensive collateral estoppel, the Supreme Court recognized that the "broader question" presented was "whether it is any longer tenable to afford a litigant more than one full and fair opportunity for judicial resolution of the same issue." Id. at 328. The Supreme Court stopped short of answering that broader question in the negative—but not by much—stating:

> In any lawsuit where a defendant, because of the mutuality principle, is forced to present a complete defense on the merits to a claim which the

rule of the common law is that a judgment in a criminal proceeding cannot be read in evidence in a civil action to establish any fact there determined" and identifying the primary reason for this rule as "the parties are not the same").

plaintiff has fully litigated and lost in a prior action, there is an arguable misallocation of resources. To the extent the defendant in the second suit may not win by asserting, without contradiction, that the plaintiff had fully and fairly, but unsuccessfully, litigated the same claim in the prior suit, the defendant's time and money are diverted from alternative uses—productive or otherwise—to relitigation of a decided issue. And, still assuming that the issue was resolved correctly in the first suit, there is reason to be concerned about the plaintiff's allocation of resources. Permitting repeated litigation of the same issue as long as the supply of unrelated defendants holds out reflects either the aura of the gaming table or a lack of discipline and of disinterestedness on the part of the lower courts, hardly a worthy or wise basis for fashioning rules of procedure.

Id. at 329 (internal citations and quotation marks omitted).

Given these comments, it is not surprising that, only eight years later, the Supreme Court also abrogated the mutuality requirement for offensive collateral estoppel. Parklane Hosiery Co., 439 U.S. at 326. In that case, stockholders brought a class action suit in the United States District Court against Parklane Hosiery Company and thirteen of its officers, directors, and stockholders (collectively "Parklane defendants"), alleging that they "had issued a materially false and misleading proxy statement in connection with a merger," id. at 324 (footnote omitted), and that issuance of the proxy statement had violated certain provisions of the Securities Exchange Act, as well as various rules and regulations of the Securities and Exchange Commission ("SEC"), id. The plaintiffs in the class action suit sought compensatory damages, rescission of the merger, and recovery of costs. Id.

Before the class action suit was tried, the SEC filed suit against the Parklane defendants in the United States District Court and alleged that the proxy statement was materially false and misleading in essentially the same respects as that alleged in the stockholders' class action. The SEC sought injunctive relief. Id. After a four-day trial of the SEC lawsuit, the District Court ruled that the proxy statement was materially false and misleading and entered a declaratory judgment to that effect. Id. at 324-25. The United States Court of Appeals for the Second Circuit affirmed. Id. at 325.

Thereafter, the plaintiffs in the stockholders' class action suit moved for partial summary judgment, asserting that the Parklane defendants were collaterally estopped from relitigating the issues that had been resolved against them in the SEC lawsuit. Id. The District Court denied the motion, but the United States Court of Appeals reversed, holding that any party who has had issues of fact determined against him after a full and fair opportunity to litigate is collaterally estopped from relitigating the issues. Id.

The United States Supreme Court granted certiorari and framed the question as "whether a litigant who was not a party to a prior judgment may nevertheless use that judgment 'offensively' to prevent a defendant from relitigating issues resolved in the earlier proceeding." Id. at 325-26 (footnote omitted). The Supreme Court recognized that, with both offensive and defensive use of nonmutual collateral estoppel, "the party against whom estoppel is asserted has litigated and lost in an earlier action," id. at 328 (internal citation omitted), but it provided the following summary of the "several reasons" that previously had been offered to justify treating the two situations differently:

First, offensive use of collateral estoppel does not promote judicial economy in the same manner as defensive use does. Defensive use of collateral estoppel precludes a plaintiff from relitigating identical issues by merely switching adversaries. Thus defensive collateral estoppel gives a plaintiff a strong incentive to join all potential defendants in the first action if possible. Offensive use of collateral estoppel, on the other hand, creates precisely the opposite incentive. Since a plaintiff will be able to rely on a previous judgment against a defendant but will not be bound by that judgment if the defendant wins, the plaintiff has every incentive to adopt a "wait and see" attitude, in the hope that the first action by another plaintiff will result in a favorable judgment. Thus offensive use of collateral estoppel will likely increase rather than decrease the total amount of litigation, since potential plaintiffs will have everything to gain and nothing to lose by not intervening in the first action.

A second argument against offensive use of collateral estoppel is that it may be unfair to a defendant. If a defendant in the first action is sued for small or nominal damages, he may have little incentive to defend vigorously, particularly if future suits are not foreseeable. Allowing offensive collateral estoppel may also be unfair to a defendant if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant. Still another situation where it might be unfair to apply offensive estoppel is where the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result.

Id. at 329-31 (footnotes, citations, and internal quotation marks omitted). The Supreme Court concluded that "the preferable approach" for dealing with the differences between the two types of collateral estoppel was "not to preclude the use of [nonmutual] offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied." Id. at 331 (footnote omitted).

The Supreme Court adopted the following general rule: "[W]here a plaintiff could easily have joined in the earlier action or where, either for the reasons discussed above or

for other reasons, the application of [nonmutual] offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of [nonmutual] offensive collateral estoppel." Id. Applying this general rule, the Supreme Court concluded that "none of the circumstances that might justify reluctance to allow the offensive use of collateral estoppel" were present. Id. Applying offensive collateral estoppel to the Parklane defendants would not "reward a private plaintiff who could have joined in the previous action," because the stockholders' class action plaintiffs "probably could not have joined in the injunctive action brought by the SEC even had [they] so desired." Id. at 332 (footnote omitted). "[N]o unfairness" resulted from applying nonmutual collateral estoppel offensively against the Parklane defendants, because, "in light of the serious allegations made in the SEC's complaint" and "the foreseeability of subsequent private suits that typically follow a successful [g]overnment judgment, [the Parklane defendants] had every incentive to litigate the SEC lawsuit fully and vigorously." Id. (footnote omitted). Moreover, "the judgment in the SEC action was not inconsistent with any previous decision" and "no procedural opportunities . . . of a kind that [would have been] likely to cause a different result" were available in the stockholders' class action but unavailable in the SEC action. Id. (footnote omitted). Because the Parklane defendants had "received a 'full and fair' opportunity to litigate their claims in the SEC action," the Supreme Court held that "the contemporary law of collateral estoppel" precluded them "from relitigating the question of whether the proxy statement was materially false and misleading." Id. at 332-33.

Three years after the Supreme Court abolished the mutuality requirement for offensive collateral estoppel, the Restatement (Second) of Judgments was published. It also sanctioned nonmutual offensive and defensive collateral estoppel, adopted a general approach similar to that articulated in Parklane Hosiery Co., and included a specific provision addressing the collateral estoppel effect of criminal judgments in subsequent civil proceedings.

Section 29 of the Restatement (Second) of Judgments deals with mutuality generally and provides:

> A party precluded from relitigating an issue with an opposing party,
> in accordance with [sections] 27[8] and 28,[9] is also precluded from doing so

---

[8] Section 27 of the Restatement (Second) of Judgments provides: "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27 (1982).

[9] Section 28 of the Restatement (Second) of Judgments provides:

with another person unless the fact that he lacked full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue. The circumstances to which consideration should be given include those enumerated in [section] 28 and also whether:

(1) Treating the issue as conclusively determined would be incompatible with an applicable scheme of administering the remedies in the actions involved;

(2) The forum in the second action affords the party against whom preclusion is asserted procedural opportunities in the presentation and determination of the issue that were not available in the first action and could likely result in the issue being differently determined;

---

Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:

(1) The party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action; or

(2) The issue is one of law and (a) the two actions involve claims that are substantially unrelated, or (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws; or

(3) A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them; or

(4) The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action; or

(5) There is a clear and convincing need for a new determination of the issue (a) because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action, (b) because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action, or (c) because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.

Restatement (Second) of Judgments § 28 (1982).

(3) The person seeking to invoke favorable preclusion, or to avoid unfavorable preclusion, could have effected joinder in the first action between himself and his present adversary;

(4) The determination relied on as preclusive was itself inconsistent with another determination of the same issue;

(5) The prior determination may have been affected by relationships among the parties to the first action that are not present in the subsequent action, or apparently was based on a compromise verdict or finding;

(6) Treating the issue as conclusively determined may complicate determination of issues in the subsequent action or prejudice the interests of another party thereto;

(7) The issue is one of law and treating it as conclusively determined would inappropriately foreclose opportunity for obtaining reconsideration of the legal rule upon which it was based;

(8) Other compelling circumstances make it appropriate that the party be permitted to relitigate the issue.

Restatement (Second) of Judgments § 29 (1982).

Section 85, which deals specifically with the collateral estoppel effect of criminal judgments in subsequent civil actions, provides:

With respect to issues determined in a criminal prosecution:

(1) A judgment in favor of the prosecuting authority is preclusive in favor of the government:

(a) In a subsequent civil action between the government and the defendant in the criminal prosecution, as stated in [section] 27 with the exceptions stated in [section] 28;

(b) In a subsequent civil action between the government and another person whose claim is derivative from the defendant as specified in [sections] 46, 48, 56(1), and 59-61, or analogous rules.

(2) A judgment in favor of the prosecuting authority is preclusive in favor of a third person in a civil action:

(a) Against the defendant in the criminal prosecution as stated in [section] 29; and

(b) Against a person having a relationship with the defendant specified in [sections] 46, 48, 56(1), and 59-61, or analogous rules.

(3) A judgment against the prosecuting authority is preclusive against the government only under the conditions stated in [sections] 27-29.

Id. § 85.

Like the Supreme Court and the drafters of the Restatement (Second) of Judgments, an overwhelming majority of jurisdictions have now abrogated the traditional mutuality requirement for collateral estoppel.[10] This appeal provides us with an

---

[10] Thirty-six states and the District of Columbia have abolished the traditional mutuality requirement for collateral estoppel. Pennington v. Snow, 471 P.2d 370, 377 (Alaska 1970); Wetzel v. Ariz. State Real Estate Dept., 727 P.2d 825, 829 (Ariz. Ct. App. 1986); Johnson v. Union Pac. R.R., 104 S.W.3d 745, 751 (Ark. 2003); Bernhard, 122 P.2d at 894 (Cal. 1942); Cent. Bank Denver, N.A. v. Mehaffy, Rider, Windholz & Wilson, 940 P.2d 1097, 1101 (Colo. App. 1997); Aetna Cas. & Sur. Co. v. Jones, 596 A.2d 414, 422-23 (Conn. 1991); State Farm Fire & Cas. Co. v. Hackendorn, 605 A.2d 3, 10 (Del. Super. Ct. 1991); Exotics Haw.-Kona, Inc. v. E.I. Dupont De Nemours & Co., 90 P.3d 250, 263 (Haw. 2004); W. Indus. & Envtl. Servs., Inc. v. Kaldveer Assoc., Inc., 887 P.2d 1048, 1052 (Idaho 1994); Preferred Am. Ins. v. Dulceak, 706 N.E.2d 529, 532 (Ill. App. Ct. 1999); Stephens v. State, 874 N.E.2d 1027, 1031 (Ind. App. 2007); Hunter v. City of Des Moines, 300 N.W.2d 121, 125 (Iowa 1981); Moore v. Commonwealth, 954 S.W.2d 317, 319 (Ky. 1997); State Mut. Ins. Co. v. Bragg, 589 A.2d 35, 37 (Me. 1991); Aetna Cas. & Sur. Co. v. Niziolek, 481 N.E.2d 1356, 1359-60 (Mass. 1985); Aufderhar v. Data Dispatch, Inc., 452 N.W.2d 648, 650 (Minn. 1990); In re Carey, 89 S.W.3d 477, 498 (Mo. 2002); Aetna Life & Cas. Co. v. Johnson, 673 P.2d 1277, 1280-81 (Mont. 1984); Peterson v. Neb. Natural Gas Co., 281 N.W.2d 525, 527 (Neb. 1979); Paradise Palms Cmty. Ass'n v. Paradise Homes, 505 P.2d 596, 599 (Nev. 1973); Aubert v. Aubert, 529 A.2d 909, 912 (N.H. 1987); N.J. Mfrs. Ins. Co. v. Brower, 391 A.2d 923, 926 (N.J. Super. Ct. App. Div. 1978); Silva v. State, 745 P.2d 380, 384 (N.M. 1987); S.T. Grand, Inc. v. City of New York, 298 N.E.2d 105, 107-08 (N.Y. 1973); Rymer v. Estate of Sorrells, 488 S.E.2d 838, 840 (N.C. Ct. App. 1997); 533 Short N. LLC v. Zwerin, No. 14AP-1016, 2015 WL 5771924, at *7 (Ohio Ct. App. 2015); Lee v. Knight, 771 P.2d 1003, 1005 (Okla. 1989); Bahler v. Fletcher, 474 P.2d 329, 338 (Or. 1970); In re Ellis' Estate, 333 A.2d 728, 730-31 (Pa. 1975); Beall v. Doe, 315 S.E.2d 186, 190 (S.C. Ct. App. 1984); Eagle Prop., Ltd. v. Scharbauer, 807 S.W.2d 714, 721 (Tex. 1990); Richards v. Hodson, 485 P.2d 1044, 1046 (Utah 1971); Trepanier v. Getting Organized, Inc., 583 A.2d 583, 587-88 (Vt. 1990); Club Level, Inc. v. City of Wenatchee, 189 Wash. App. 1051, 2015 WL 5138564, at *3 (Wash. Ct. App. 2015); Laney v. State Farm Mut. Auto. Ins. Co., 479 S.E.2d 902, 907 (W. Va. 1996); Michelle T. by Sumpter v. Crozier, 495 N.W.2d 327, 331 (Wis. 1993). Additionally, federal judges deciding cases under state law have predicted that two other states would abandon the mutuality requirement if presented with the opportunity. Atchison v. Wyoming, 763 F.2d 388, 391-92 (10th Cir. 1985) (applying Wyoming law); Breeland v. Sec. Ins. Co. of New Haven, Conn., 421 F.2d 918, 923 (5th Cir. 1969) (applying Louisiana law).

opportunity to determine whether the mutuality requirement should be abolished or modified in Tennessee.

## B. *Collateral Estoppel and the Mutuality Requirement in Tennessee*

Tennessee, like other jurisdictions, recognizes both defensive and offensive collateral estoppel. Trinity Indus., Inc., 77 S.W.3d at 184-85. With respect to nonmutual offensive collateral estoppel, the doctrine involved in this appeal, Tennessee remains among the small minority of jurisdictions that continue to adhere to the strict mutuality requirement. See id. at 185; Gann v. Int'l Harvester Co. of Canada, 712 S.W.2d 100, 101 (Tenn. 1986); Cole v. Arnold, 545 S.W.2d 95, 97 (Tenn. 1977); Beaty, 15 S.W.3d at 825; Leathers v. U.S.A. Trucking, No. 02A01-9109-CV-00198, 1992 WL 37146, at *1 (Tenn. Ct. App. Mar. 2, 1992); Beaman Bottling Co. v. Bennett, No. 03A01-9103-CV-00091, 1991 WL 218228, at *2 (Tenn. Ct. App. Oct. 29, 1991); Carroll v. Times Printing Co., No. 596, 1987 WL 10332, at *3 (Tenn. Ct. App. May 5, 1987); Algood v. Nashville Mach. Co., 648 S.W.2d 260, 262-63 (Tenn. Ct. App. 1983). Moreover, in two more recent decisions with facts more similar to this case, the Court of Appeals has continued to deny preclusive collateral estoppel effect to criminal judgments in subsequent civil actions, although the intermediate appellate court has recognized that such judgments are admissible in evidence under Tennessee Rule of Evidence 803(22). See In re James M. Cannon Family Trust, No. M2011-02660-COA-R3-CV, 2012 WL 5993736, at *5 (Tenn. Ct. App. Nov. 30, 2012); Wilkerson v. Leath, No. E2011-00467-COA-R3-CV, 2012 WL 2361972 (Tenn. Ct. App. June 22, 2012), perm. app. denied (Tenn. Nov. 21, 2012).

Relying on the traditional mutuality requirement, the foregoing 2012 decisions of the Court of Appeals, and his own affidavit asserting his innocence of the criminal offenses of which he has been convicted, Mr. Arnold argues that the trial court erred by granting Ms. Bowen's motion for partial summary judgment. Mr. Arnold asserts that applying offensive collateral estoppel in a civil case based on a prior criminal conviction is contrary to public policy, because neither Ms. Bowen nor John Doe N were parties to the criminal prosecution or in privity with the prosecution in the prior criminal action. Mr. Arnold further asserts that the issues in this civil case differ from the issues decided in the criminal prosecution. He contends as well that collateral estoppel should not apply because it will be imputed to the other defendants in this case, none of whom were parties to the criminal case. Mr. Arnold reiterates that he maintained his innocence throughout the criminal proceeding, and still does, and he argues that his affidavit asserting his innocence creates in this civil action a genuine issue of material fact as to whether he raped or sexually battered the minor plaintiff and that this material factual dispute should have precluded summary judgment.

In response, Ms. Bowen contends that the mutuality requirement should be abolished entirely or, at a minimum, should be abrogated when, as here, the victim of a criminal offense sues the person convicted of perpetrating the criminal offense and bases

an offensive collateral estoppel claim on the prior criminal conviction. Alternatively, Ms. Bowen contends that the mutuality requirement is satisfied in such circumstances because, according to Ms. Bowen, victims of criminal offenses, like John Doe N here, are in privity with the prosecution in criminal trials.

Having thoroughly considered the arguments of the parties, as well as the historical development and current standing of the mutuality requirement in other jurisdictions, we conclude that the traditional mutuality requirement has outlived its usefulness and should be abandoned in Tennessee for both offensive and defensive collateral estoppel.[11] Like the California Supreme Court, we can now discern "no compelling reason" to maintain the mutuality requirement. Bernhard, 122 P.2d at 894. "In light of the scarcity of judicial time and resources, the repeated litigation of issues that have already been conclusively resolved by a court carries a considerable price tag in both money and time." Jones, 596 A.2d at 424.

We conclude that, when determining whether to apply offensive or defensive collateral estoppel in a particular case, Tennessee courts should be guided by the general approach set out in section 29 of the Restatement (Second) of Judgments. Cf. Turner v. Turner, 473 S.W.3d 257, 260 (Tenn. 2015) (holding that section 66 of the Restatement (Second) of Judgments describes the type of exceptional circumstances that warrant denying relief from void judgments); Mullins, 294 S.W.3d at 535, 537-38 (referencing sections 27, 29, and 87 of the Restatement (Second) of Judgments when determining whether a judgment in a federal action supported a collateral estoppel claim raised in a subsequent state action).

As already explained, section 29 generally precludes relitigation of issues decided in prior lawsuits unless the party against whom collateral estoppel is asserted lacked a full

---

[11] Although Tennessee courts have not expressly rejected the party mutuality requirement for defensive collateral estoppel, it has been relaxed with respect to defensive collateral estoppel. Trinity Indus. Inc., 77 S.W.3d at 185. This relaxation has been accomplished by defining privity as relating to "the subject matter of the litigation not to the relationship between the parties themselves. Privity connotes an identity of interest, that is, a mutual or successive interest to the same rights." State ex rel. Cihlar v. Crawford, 39 S.W.3d 172, 180 (Tenn. Ct. App. 2000) (citations omitted). Relying on this definition, the Court of Appeals, in Phillips v. General Motors, 669 S.W.2d 665, 669 (Tenn. Ct. App. 1984), held that a plaintiff who had sued an automobile dealer for a defective car and lost was precluded from bringing an identical claim against the automobile manufacturer because the judgment in the first lawsuit resolved that the car was not defective and precluded the plaintiff from asserting that the car was defective in a subsequent action against the manufacturer. See also Sullivan v. Wilson Cty., No. M2011-00217-COA-R3-CV, 2012 WL 1868292, at *11 (Tenn. Ct. App. May 22, 2012) (applying defensive collateral estoppel in the absence of strict party mutuality). Thus, as a practical matter, Tennessee, like the Supreme Court, the Restatement (Second) of Judgments, and the majority of states, has already implicitly abrogated the party mutuality requirement with respect to defensive collateral estoppel. Trinity Indus., Inc., 77 S.W.3d at 185. We take this opportunity to expressly abandon it.

- 15 -

and fair opportunity to litigate the issue in the first action or some other circumstance justifies affording that party an opportunity to relitigate the issue. Section 29 enumerates some of the circumstances courts should consider when determining if an opportunity for relitigation should be afforded, and it also incorporates by reference section 28, which lists additional circumstances that courts should consider when making this determination. The circumstances enumerated in sections 28 and 29, like the analysis the Supreme Court articulated in Parklane Hosiery Co., afford considerable discretion to courts determining whether nonmutual collateral estoppel should apply in a particular case.

With respect to the particular issue in this case—whether offensive collateral estoppel should apply in a civil action based on a prior criminal judgment—we conclude that Tennessee courts should be guided by section 85 of the Restatement (Second) of Judgments.[12] The general rule under section 85 is that "[a] judgment in favor of the prosecuting authority is preclusive in favor of a third person in a civil action . . . [a]gainst the defendant in the criminal prosecution as stated in [section] 29." Restatement (Second) of Judgments § 85.[13] Because section 85 incorporates section 29, which in turn incorporates section 28, courts have considerable discretion to allow for relitigation if the circumstances enumerated in sections 28 and 29 convince the court that religitation is warranted.

## C. Collateral Estoppel in This Appeal

Applying section 85 of the Restatement (Second) of Judgments (including the considerations of sections 28 and 29 which it incorporates by reference) to the undisputed facts of this case, we conclude that the trial court properly granted Ms. Bowen partial summary judgment against Mr. Arnold on the issue of "whether he raped and sexually battered" John Doe N. Mr. Arnold had a full and fair opportunity to litigate this issue in his criminal trial. Id. §§ 85(2)(a), 29. Treating this issue as conclusively determined in the criminal action is not "incompatible with an applicable scheme of administering the remedies in the actions involved." Id. § 29(1). To the contrary, allowing a civil jury

---

[12] Our holding in this appeal should not be construed as abrogating or limiting Scarbrough, in which this Court held that the *prosecution* may not use collateral estoppel offensively *in a criminal case* to establish an essential element of a charged offense. 181 S.W.3d at 658-59. To the contrary, we reaffirm our holding in Scarbrough, which was grounded upon the Tennessee constitutional right to trial by jury and its "special resonance in criminal matters." Id. at 658 (quoting State v. Cleveland, 959 S.W.2d 548, 551 (Tenn. 1997)) (internal quotation marks omitted). Unlike Scarbrough, this appeal involves the offensive collateral estoppel effect of a prior criminal conviction in a subsequent *civil* lawsuit.

[13] We note that an acquittal in a criminal proceeding does not protect the defendant from liability in a subsequent civil action by the government related to the same misconduct. See One Lot Emerald Cut Stones v. United States, 409 U.S. 232, 234 (1972); Helvering v. Mitchell, 303 U.S. 391, 397 (1938).

functioning under a much lower standard of proof to relitigate and potentially contradict a unanimous finding of a criminal jury would be "a general indictment of the whole American jury system." Hurtt v. Stirone, 206 A.2d 624, 626 (Pa. 1965). Mr. Arnold's guilt or innocence of rape and aggravated sexual battery was the central focus of the criminal trial, and his fundamental liberty interest was at stake, giving him plenty of incentive to mount a vigorous defense against the charges. Restatement (Second) of Judgments §§ 85(2)(a), 29. Moreover, he obtained appellate review of the criminal judgment, and his convictions were affirmed on appeal. Id. §§ 28 (1), 29, 85(2)(a). Affording preclusive effect to Mr. Arnold's final criminal judgment in this civil action raises no fairness or administrative-incompatibility concerns.

Furthermore, this civil forum does not afford Mr. Arnold any "procedural opportunities in the presentation and determination of the issue that were not available" in his criminal prosecution. Id. § 29(2). To the contrary, the criminal prosecution afforded Mr. Arnold numerous safeguards, aimed at protecting his liberty interest and reducing the potential for an erroneous judgment, which are not available to him in this civil action. See Zinger v. Terrell, 985 S.W.2d 737, 740 (Ark. 1999); Teitelbaum Furs, Inc., 375 P.2d at 441; Am. Family Mut. Ins. Co. v. Savickas, 739 N.E.2d 445, 450 (Ill. 2000). These safeguards include the beyond-a-reasonable-doubt burden of proof on the prosecution, the presumption of innocence, the right to counsel, and the requirement that prosecutors divulge exculpatory evidence. Teitelbaum Furs, Inc., 375 P.2d at 441 ("To preclude a civil litigant from relitigating an issue previously found against him in a criminal prosecution is less severe than to preclude him from relitigating such an issue in successive civil trials, for there are rigorous safeguards against unjust conviction, including the requirements of proof beyond a reasonable doubt and of a unanimous verdict, the right to counsel, and a record paid for by the state on appeal." (citations omitted)). As a result, as we have already noted, "there is a stronger rationale for applying collateral estoppel against a former criminal defendant than for applying it against a party to a prior civil case." Hopps, 506 A.2d at 297; see also Niziolek, 481 N.E.2d at 1359; Restatement (Second) of Judgments §§ 28(3)-(4), 29(2).

Moreover, Ms. Bowen "cannot properly be charged with sitting back and avoiding the costs of participation in on-going litigation, and then reaping a benefit from the resulting judgment." Niziolek, 481 N.E.2d at 1361. Like the plaintiffs in Parklane Hosiery Co., Ms. Bowen could not have joined the criminal prosecution against Mr. Arnold, even if she had tried. Restatement (Second) of Judgments § 29(3).

Additionally, Mr. Arnold's criminal convictions are not "inconsistent with another determination of the same issue." Nor are his criminal convictions "based on a compromise verdict or finding" or "affected by relationships among the parties to the first action that are not present in the subsequent action." Id. § 29(5). And, the issue on which the trial court granted partial summary judgment based on collateral estoppel— whether the defendant raped or sexually battered John Doe N—is an issue of fact, not

"one of law." Id. § 29(7). Treating this issue as "conclusively determined" will not, therefore, "inappropriately foreclose opportunity for obtaining reconsideration of the legal rule." Id. Nor will applying collateral estoppel "complicate determination of issues in the [civil action] or prejudice the interests of another party [to the civil action]." Id. § 29(6). Precluding Mr. Arnold from relitigating "whether he raped and sexually battered" John Doe N does not prevent any of the other defendants from contesting Ms. Bowen's allegations of negligence against them. Finally, none of the other circumstances enumerated in sections 28 and 29, or any other compelling circumstance, justifies affording Mr. Arnold an opportunity to relitigate the issue of "whether he raped and sexually battered" John Doe N. Id. §§ 28 (5), 29 (8).

## IV. Conclusion

Accordingly, for the reasons stated herein, we abolish the mutuality requirement for defensive and offensive collateral estoppel in Tennessee, adopt sections 29 and 85 of the Restatement (Second) of Judgments, and affirm the trial court's grant of partial summary judgment against Mr. Arnold on the issue of "whether he raped and sexually battered" John Doe N. This matter is remanded to the trial court for further proceedings consistent with this decision. Costs of this appeal are taxed to William E. Arnold, Jr., and his surety, for which execution may issue if necessary.

_____
CORNELIA A. CLARK, JUSTICE