**STATE of Tennessee, Appellant,**

v.

**David McKENNON, Nelson Roberts, Russell Workman, & Ken Pennington, Appellees.**

Court of Criminal Appeals of Tennessee, at Nashville.

Dec. 3, 1998.

Jerry C. Colley, Columbia, for David McKennon.

Gary Howell, Columbia, for Nelson Roberts.

William Barnes, Columbia, for Russell Workman.

Peter J. Strianse, Nashville, for Ken Pennington.

John Knox Walkup, Attorney General and Reporter, Karen M. Yacuzzo, Asst. Atty. Gen., Nashville, Mike Bottoms, Dist. Atty. Gen., Lawrenceburg, for the Appellant.

## OPINION

WELLES, Judge.

The State of Tennessee, pursuant to Tennessee Rule of Appellate Procedure 3(c), appeals as of right from the trial court's dismissal of charges against Defendants David McKennon, Nelson Roberts, Russell Workman, and Ken Pennington. The dismissals were based on grounds of double jeopardy and collateral estoppel. We conclude that the trial court erred in dismissing indictments against each Defendant for the especially aggravated kidnapping of James Wayne Blade and against Defendant McKennon for possession of methamphetamine. The trial court properly dismissed indictments charging each Defendant with the especially aggravated kidnapping of William Lovell and Robert Briglio.

This case involves the alleged kidnapping of James Wayne Blade, William Lovell, and Robert Briglio because of a large sum of money owed by Blade to Defendant Pennington. According to the testimony given by the victims at the preliminary hearing, Defendants held them captive at gunpoint from at least March 26, 1995 [1] to March 28, 1995. On March 28, Defendants allegedly took Lovell and Briglio to Hickman County, while Blade was taken to Wilson County. Defendants were tried and acquitted in Hickman County on charges arising from the kidnapping of Lovell and Briglio. They were subsequently indicted in Maury County for the kidnapping of Lovell, Briglio, and Blade. The trial court's dismissal of the Maury County indictments based upon double jeopardy and collateral estoppel is the subject of this appeal.

According to Wayne Blade's testimony at trial in Hickman County and at the preliminary hearing in this case,[2] Blade drove to William Lovell's home on Saturday evening, March 25, 1995. Lovell did not have a telephone, and Blade needed to discuss a work assignment for the next day. When Blade arrived, Lovell was not at home, so Blade, who was a good friend, slept on his couch while waiting. Lovell had arrived home by the time Blade awoke the next morning. The two men then left Lovell's house on the way to Blade's home. Although they could have taken a paved route, Lovell, who was driving Blade's truck for no apparent reason, drove on an unpaved, deserted road.

While on this road, a Camaro suddenly drove in front of the truck and turned sideways, forcing the men to stop. Blade then noticed that a Lincoln had suddenly appeared behind the truck, blocking them from behind. Defendants McKennon and Roberts emerged from the Camaro with weapons and directed Lovell and Blade to exit the truck. As Blade complied, McKennon shot the ground in front of Blade's feet. Defendants McKennon, Roberts, and Workman forced Blade into the Camaro and Lovell into the Lincoln, where Robert Briglio waited.

---

1. Briglio testified that he had been kept by Defendants for one week prior to March 26.

2. All facts are presented as alleged by Wayne Blade.

Throughout March 26 and the next two days, Defendants McKennon, Roberts, and Workman, among others, held Blade, Lovell, and Briglio at gunpoint in different locations. On March 28, Defendant Pennington and Mr. Dick arrived where Blade, Lovell, and Briglio were being kept. By threatening his life, Pennington and Dick persuaded Blade to recant a statement he had given for a Wilson County case in which Dick had previously kidnapped Blade. When Blade agreed, Dick drove him to the Lebanon office of Dick's attorney, and then to the Wilson County District Attorney's office.

Before Dick and Blade left for Lebanon, Defendants informed Blade that they intended to drive to Hickman County to kill his father, Billy Blade. The Blades had been involved in dealing drugs for Pennington, and they owed as much as twenty thousand dollars to him. While Blade recanted his testimony, the Wilson County District Attorney's office received word that Billy Blade had been shot. Dick's attorney would not permit Dick to take Blade with him; Blade then walked away freely and contacted police.

In May of 1995, the Hickman County Grand Jury indicted Defendants for the especially aggravated kidnapping of Lovell and Briglio,[3] the attempted first degree murder of Billy Blade, conspiracy to commit the first degree murder of Billy Blade, and unlawful possession of a weapon with intent to employ it in commission of a felony. After trial in November of 1996, the Hickman County jury found all Defendants not guilty of especially aggravated kidnapping.[4]

In June of 1995, a Maury County Grand Jury indicted Defendants for the especially aggravated kidnapping of Wayne Blade, Lovell, and Briglio. In addition, McKennon was indicted for possession of methamphetamine. The trial judge granted Defendants' motions to dismiss based upon double jeopardy and collateral estoppel. The State concedes that double jeopardy bars prosecution of Defendants in Maury County for the especially aggravated kidnapping of Lovell and Briglio, and we agree. Defendant McKennon concedes that dismissal of his methamphetamine possession charge was error, and we again agree. Therefore, the only issue for resolution by this Court is whether the State may prosecute Defendants for the especially aggravated kidnapping of Wayne Blade in Maury County. We conclude that it may.

Defendants concede that double jeopardy does not bar prosecution for Blade's kidnapping; the Hickman County Grand Jury never charged, indicted, or tried Defendants for that offense. However, Defendants argue that the doctrine of collateral estoppel nonetheless bars prosecution (1) because the current indictment arose out the "same criminal episode" that was previously tried in Hickman County, and (2) because that court resolved an issue of "ultimate fact"—presumedly that the Defendants kidnapped no one—in favor of Defendants. Though we agree with the former assertion, we disagree with the latter.

■ The United States Supreme Court recognized in 1970 that collateral estoppel had been "an established rule of federal criminal law" for at least fifty years. *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) (discussing its decision in *United States v. Oppenheimer,*

---

3. Wayne Blade had never been transported to Hickman County during the criminal episode.

4. In addition, the jury found McKennon and Pennington guilty of attempted reckless homicide and conspiracy to commit reckless homicide and not guilty of possession of a weapon. Roberts and Workman were found guilty of conspiracy and possession of a weapon and not guilty of attempted homicide. The trial judge set aside Defendants' convictions for attempted reckless homicide and conspiracy to commit reckless homicide, finding that the offenses did not exist; and she set aside convictions for possession of a weapon on the basis that these verdicts could not stand alone.

242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 (1916)). This established rule of collateral estoppel is "embodied in the Fifth Amendment guarantee against double jeopardy," *id.* at 445, 90 S.Ct. 1189, and "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* at 443, 90 S.Ct. 1189; *see State v. Allen,* 752 S.W.2d 515, 516–17 (Tenn.Crim.App.1988).

The *Ashe* Court warned against applying the principle of collateral estoppel "with the hypertechnical and archaic approach of a 19th century pleading book"; encouraging instead that the doctrine be employed practically, with "realism and rationality," and " 'with an eye to all the circumstances.' " *Id.* at 444, 90 S.Ct. 1189 (quoting *Sealfon v. United States,* 332 U.S. 575, 579, 68 S.Ct. 237, 92 L.Ed. 180 (1948)).

■ Application of collateral estoppel in a case in which the previous prosecution resulted in a general verdict of acquittal "requires a court to 'examine that record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' " *Id.* (quoting Daniel K. Mayers & Fletcher L. Yarbrough, *Bis Vexari: New Trials and Successive Prosecutions,* 74 Harv. L.Rev. 1, 38–39 (1960)); *see State v. Allan Brooks,* No. 01C01–9510–CC–00324, 1998 WL 754315, at *8 (Tenn.Crim. App., Nashville, Oct. 29, 1998); *State v. Ernest Vickers,* No. 02C01–9609–CC–00313, 1997 WL 370357, at *5 (Tenn.Crim. App., Jackson, July 3, 1997).

In *Ashe,* six men were robbed by several men while playing poker. *Id.* at 437, 90 S.Ct. 1189. Ashe was charged with six counts of robbery and tried initially for only one, robbery of victim Knight. *Id.* at 438, 90 S.Ct. 1189. The trial court instructed the jury that if it found Ashe to be a participant in the offense, (1) the theft of any money would sustain a conviction for robbery, and (2) Ashe would be guilty even if he had not personally robbed the victim. *Id.* at 439, 90 S.Ct. 1189. Ashe was not strongly identified as a perpetrator, and the jury acquitted him. *Id.* The State of Missouri later attempted to prosecute Ashe for the robbery of other victims, and the Supreme Court concluded that

the record is utterly devoid of any indication that the first jury could rationally have found that an armed robbery had not occurred, or that Knight had not been a victim of that robbery. The single rationally conceivable issue in dispute before the jury was whether the petitioner had been one of the robbers. And the jury by its verdict found that he had not. The federal rule of law, therefore, would make a second prosecution for the robbery of Roberts wholly impermissible.

*Id.* at 445, 90 S.Ct. 1189.

■ Here, as the State maintains, Defendants bear the burden of demonstrating that the issue for which they seek to foreclose relitigation was actually decided in the first trial and that determination of that issue was necessary to the judgment. *See Dowling v. United States,* 493 U.S. 342, 350–52, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990) (recognizing that the United States Courts of Appeals had unanimously placed this burden on defendants). Defendants have not carried this burden.

■ First, the Hickman County jury returned a general verdict at Defendants' first trial. Therefore, we must examine the entire record of that trial to determine whether any one issue necessary to the judgment in this case was actually decided in favor of Defendants, but this Court does not have the complete record of the Hickman County trial. In addition, the Maury County trial judge did not identify the

basis upon which he dismissed the indictments, other than to conclude that prosecution was barred by collateral estoppel. Therefore, we cannot know whether he considered the pleadings, evidence, and other relevant matter.[5] In this way, Defendants have not met their burden.

 However, we further agree with the State that even if the record was complete, Defendants cannot demonstrate that "a rational jury could [not] have grounded its verdict upon an issue other than that which the defendant[s] seek[ ] to foreclose from consideration." *See Ashe,* 397 U.S. at 444, 90 S.Ct. 1189. Here, identity has been clearly established; Defendants and victims had known each other for a period of time. As the State correctly argues, in this case the "single rationally conceivable issue in dispute" before the Hickman County jury—or, "the ultimate issue"— was likely whether the alleged victims were held against their will or whether they voluntarily remained with Defendants. Voluntariness is an issue personal to each victim; and a jury could rationally decide that while Lovell and Briglio were not confined against their will, Wayne Blade was.[6] We cannot conclude that this issue has been decisively resolved in favor of Defendants with respect to Wayne Blade's confinement.

We affirm the trial court's dismissal of indictments charging each Defendant with the especially aggravated kidnapping of William Lovell and Robert Briglio, and we reverse the dismissal of indictments charging each Defendant with the especially aggravated kidnapping of James Wayne Blade. In addition, we reverse the trial court's dismissal of the charges against Defendant McKennon for possession of methamphetamine.

This case is remanded to the trial court for such further proceedings as may be warranted consistent with this opinion.

SMITH, J., and JOHN K. BYERS, Senior Judge, concur.

---

5. The State contends that like this Court, the Maury County trial court also did not have the complete record of the Hickman County trial for consideration.

6. Some evidence tended to show that Lovell and Briglio had been co-conspirators in the kidnapping of Blade.