IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
November 18, 2025 Session

## STATE OF TENNESSEE v. JOSHUA MORRIS

**Appeal from the Criminal Court for Knox County**
**No. 124164   D. Kelly Thomas, Jr., Senior Judge**

_____

### No. E2025-00041-CCA-R3-CD
_____

The State appeals the Knox County Criminal Court's order dismissing the indictment against Defendant, Joshua Morris, charging him with driving under the influence ("DUI"). The State contends that the criminal court erred in concluding that under the doctrine of collateral estoppel, the State was precluded from relitigating the issue of probable cause that Defendant was driving under the influence in relation to his DUI charge after a circuit court determined that probable cause was not established in adjudicating Defendant's implied consent violation charge. We conclude that the criminal court erred in finding that the doctrine of collateral estoppel applied and in dismissing the indictment. Accordingly, we reverse the criminal court's dismissal of the indictment, reinstate the indictment, and remand to the criminal court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Remanded**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, P.J., and CAMILLE R. MCMULLEN, J., joined.

Jonathan Skrmetti, Attorney General and Reporter; Garrett D. Ward and Katherine C. Redding, Senior Assistant Attorneys General; Charme P. Allen, District Attorney General; and Mitch D. Eisenberg, Assistant District Attorney General, for the appellant, State of Tennessee.

T. Scott Jones and Baylee M. Brown, Knoxville, Tennessee, for the appellee, Joshua Morris.

# OPINION

## Factual and Procedural History

On January 14, 2022, Defendant was arrested and charged with DUI and violation of the implied consent law after officers found him asleep in the driver's seat of a vehicle parked in front of a convenience store in Knox County. On August 18, 2022, a preliminary hearing was held before the Knox County General Sessions Court, during which the State presented Officer Tyler Perocchi of the Knoxville Police Department ("KPD") as its lone witness.[1]

Officer Perocchi testified that at the time of the preliminary hearing, he had been with the KPD for approximately one year and that he had previously been an officer with the Chattanooga Police Department. He had DUI training and had participated in more than twenty DUI arrests.

On the date of Defendant's arrest, Officer Perocchi and his field training officer responded to a call about a vehicle parked in front of a convenience store on Tazewell Pike in Knox County. When they arrived, they found Defendant asleep in the driver's seat of a Ford Mustang. The vehicle was locked, and its engine was not running. No one else was in the vehicle, and both officers observed keys on the passenger seat. Officer Perocchi banged on the vehicle's window and yelled at Defendant in an attempt to awaken him but was unsuccessful. Emergency medical technicians and fire department personnel also responded to the scene. One of the emergency responders was able to open a door and rouse Defendant. Officer Perocchi testified that emergency medical personnel evaluated Defendant at the scene because they did not know whether Defendant was experiencing a health crisis or was under the influence. Emergency medical personnel determined that Defendant was "fine."

Officer Perocchi asked Defendant where he had been and where he was going, and Defendant responded that he had been to a fast-food restaurant and that he was going to a friend's house. Defendant was unable to tell the officer where he was. The officer testified that Defendant's speech was slurred and "unintelligible at times." The officer stated, "It was very difficult to understand. We, and also my partners, had to repeat our questions multiple times to get an answer." Officers requested Defendant's identification, and Defendant produced a credit card. They again requested identification, and while Defendant "was fooling with his wallet," Officer Perocchi saw Defendant's identification and took it.

---

[1] The transcript of the preliminary hearing was attached as an exhibit to Defendant's motion to dismiss.

Officer Perocchi said that Defendant had bloodshot eyes, was staggering, and had difficulty maintaining his balance, all of which were "indicators" of intoxication. Officer Perocchi asked Defendant whether he had anything to drink, and Defendant responded that he had four drinks. After Officer Perocchi requested clarification multiple times, Defendant stated that he had drunk four beers, two of which were "tall boys." Officer Perocchi stated that Defendant was not free to leave once emergency medical personnel cleared him because he "was still confused. He still had bloodshot eyes. He was still unsteady on his feet. And we couldn't understand him."

Officer Perocchi asked Defendant to perform field sobriety tests, but Defendant refused to do so. Defendant told the officer that he had a foot injury, which the officer determined was a refusal to perform the tests. Officer Perocchi agreed that such an injury may render a person unable to complete the field sobriety tests. The officer handcuffed Defendant, placed him in the back of a patrol car, and advised him of his rights. Once Defendant was in the patrol car, the officer read the implied consent form to him and asked him whether he understood the information on the form, and Defendant affirmed that he did. The officer asked Defendant to provide a blood sample, but Defendant refused and stated his refusal multiple times. Officer Perocchi stated that "[m]uch later" Defendant said he would provide a blood sample, but he did not obtain a blood sample from Defendant "due to a personal fear of seeming 'coercive.'"

Officer Perocchi said that based on his observations and the totality of the circumstances, he believed Defendant was under the influence and unable to safely operate a vehicle. Officer Perocchi acknowledged that neither he nor his training officer examined the keys found in the passenger seat to determine whether they belonged to the vehicle. The vehicle subsequently was towed from the scene.

At the conclusion of the proof, the State argued that the evidence established that Defendant was in physical control of the vehicle while intoxicated and requested that the general sessions court bind the DUI charge over to the grand jury. The State also requested that the court issue a ruling on the implied consent violation. The court found that the "officer's unrefuted testimony has made probable cause" and bound the DUI charge over to the grand jury. The court also found that the evidence was sufficient to establish that Defendant violated the implied consent law.

Defendant appealed the general sessions court's finding that he violated the implied consent law to the Knox County Circuit Court.[2] On January 11, 2023, Defendant filed a

---

[2] The propriety of appealing the implied consent issue to the circuit court as opposed to the criminal court is not an issue raised in this appeal, and we offer no opinion as to whether it was proper.

motion for summary judgment in the circuit court, alleging that he was unlawfully stopped and wrongfully charged with a violation of the implied consent provisions in Tennessee Code Annotated section 55-10-406.[3] On March 28, 2023, while the motion for summary judgment was pending, the Knox County Grand Jury returned an indictment charging Defendant with DUI.

On July 11, 2024, more than one year after Defendant was indicted for DUI, the circuit court entered an order granting Defendant's motion for summary judgment with respect to the implied consent violation. The circuit court stated that it considered the transcript of the preliminary hearing in reaching its decision. The circuit court noted that the State provided an affidavit from Officer Perocchi referencing information provided by the convenience store clerk as to how the vehicle came to be in the parking lot and the clerk's opinion regarding the status of the vehicle's operator. However, the circuit court declined to consider the affidavit because the affidavit did not state that it was being made on personal knowledge as required by Tennessee Rule of Civil Procedure 56.06 and the clerk's statements were inadmissible hearsay.

As relevant to this appeal, the circuit court examined whether pursuant to the implied consent provisions in Tennessee Code Annotated section 55-10-106(a), the officer had probable cause to believe that Defendant was driving a vehicle under the influence when the officer requested the blood draw. The circuit court focused on whether Defendant was in physical control of the vehicle. The circuit court reasoned that Defendant

> was not operating the vehicle at the time the officers and emergency personnel arrived on the scene. He was in a car, asleep or passed out in a parking lot. When he did not respond to the officers, emergency personnel popped the lock on the car and after examining him, advised the officer that [Defendant] appeared fine. The car engine was not running. Keys were located on the passenger seat of the car, but no one confirmed that the keys that were found, were in fact the keys to the car at issue. This Court believes that this is a required component of both the implied consent statute and the totality of the circumstances test laid out in *State v. Lawrence* [849 S.W.2d 761 (Tenn. 1993)].

The circuit court granted Defendant's motion for summary judgment after stating it had "determined that there are no genuine issues of material fact in this case in that there is no

---

[3] Defendant's motion for summary judgment and the State's response are not included in the appellate record.

- 4 -

basis for finding probable cause to believe that [Defendant] was driving a vehicle under the influence."

On September 11, 2024, Defendant filed a motion to dismiss the DUI charge pending in the Knox County Criminal Court, asserting that the State "is collaterally estopped from relitigating the issue of probable cause as it has been previously fully litigated and determined in a prior decision between the parties." Defendant argued that the State was a party to the earlier proceedings and remained a party in the proceedings before the criminal court, that the State had a full and fair opportunity to contest the issue of probable cause in the circuit court, and that the judgment of the circuit court was final as the State did not file an appeal.

The State filed a response in which it asserted that the circuit court lacked "competent jurisdiction" to issue a ruling that would collaterally estop a criminal prosecution of DUI and that the issue before the circuit court was the validity of the implied consent violation and not the DUI charge. The State also argued that "the interests of justice" precluded "the application of collateral estoppel in this case as it does not serve the interests of fairness and efficiency." The State maintained that the circuit court's ruling was "based on a limited record submitted for [its] review on Defense's Motion for Summary Judgment regarding an administrative finding of a violation of implied consent" and that this limited record did not include evidence establishing that the keys recovered were used to start the vehicle at the scene. The State cited to a recording of the 911 call, video from the police cruiser, and body camera footage from officers and noted that the body camera footage showed that a tow truck driver was given the keys seized from the passenger seat, used the keys to start the vehicle, and drove the vehicle onto a flatbed tow truck before towing the vehicle from the scene.

The criminal court held a hearing during which the parties offered arguments that were consistent with their pleadings. On December 11, 2014, the criminal court entered an order finding that Defendant established the elements of collateral estoppel and granting Defendant's motion to dismiss. The criminal court found that the State failed to cite to any authority to support its argument that the circuit court lacked jurisdiction to decide the issues before it and that the State never objected to the circuit court's jurisdiction when the proceedings were in the circuit court. The criminal court rejected the State's argument that the circuit court failed to consider body camera footage, finding that the State could have presented the evidence in the circuit court but failed to do so. The criminal court found that "[t]he parties had an opportunity to fully and fairly litigate the dispositive issue" in the circuit court" and that the State's remedy to challenge the circuit court's ruling would have been an appeal of that decision. The criminal court did not address the circuit court's refusal to consider the affidavit from Officer Perocchi. The criminal court concluded that the State was collaterally estopped from relitigating the issue of whether the evidence

established probable cause to believe that Defendant was driving under the influence. Thus, the criminal court dismissed the DUI charge.

The criminal court subsequently entered a judgment reflecting the dismissal of the DUI charge. The State filed a timely notice of appeal.

## Analysis

On appeal, the State asserts that Defendant failed to establish the elements of collateral estoppel and that, therefore, the criminal court erred in dismissing the DUI charge. The State maintains that the probable cause determination that the criminal court ruled the State was collaterally estopped from litigating was the probable cause determination made by the grand jury issuing the indictment. The State argues this was a different determination of probable cause than the circuit court decided regarding the violation of implied consent. The State also maintains that the criminal court proceedings "were not truly subsequent litigation to the circuit court proceedings" as the case did not involve "two pieces of litigation that were instituted separately," that it was not seeking to "relitigate" the issue of probable cause related to the DUI as the grand jury resolved the issue in returning an indictment charging Defendant with DUI, and that it was not afforded a full and fair opportunity to litigate the issue in the circuit court.

Defendant responds that the circuit court decided the same issues, and that the State was collaterally estopped from litigating the probable cause determination by the grand jury and the determination of probable cause for the warrantless arrest for DUI. Defendant further responds that the DUI charge in the criminal court constitutes subsequent litigation for purposes of collateral estoppel and that the State was afforded a full and fair opportunity to litigate the issues in the circuit court but "consciously chose not to do so."

The determination of whether collateral estoppel applies is a question of law. *Bowen ex rel Doe v. Arnold*, 502 S.W.3d 102, 106 (Tenn. 2016) (citing *Mullins v. State*, 294 S.W.3d 529, 535 (Tenn. 2009)). Thus, our standard of review on appeal is de novo with no presumption of correctness. *Emergency Med. Care Facilities, P.C. v. Bluecross Blueshield of Tenn., Inc.*, 715 S.W.3d 273, 282 (Tenn. 2025) (citing *Mullins*, 294 S.W.3d at 535; *In re Bridgestone/Firestone*, 495 S.W.3d 257, 266 (Tenn. Ct. App. 2015)).

### I. Development of the Collateral Estoppel Doctrine

To determine whether the collateral estoppel doctrine applies in the instant case, we first examine the development of the doctrine and its application in Tennessee. Collateral estoppel is an issue-preclusion doctrine that originated in civil litigation and developed in common law. *See Mullins*, 294 S.W.3d at 534 (citations omitted); *State v. Thompson*, 285

S.W.3d 840, 847 (Tenn. 2009) (citing *Cromwell v. Sac. County*, 94 U.S. 351, 353 (1876)). Collateral estoppel "bars the same parties or their privies from relitigating in a later proceeding legal or factual issues that were actually raised and necessarily determined in an earlier proceeding." *Mullins*, 294 S.W.3d at 534-35 (citations omitted). "[P]olicy considerations warranting the application of collateral estoppel in civil litigation" include "the promotion of finality in the litigation, the conservation of judicial resources, and the prevention of inconsistent decisions." *Thompson*, 285 S.W.3d at 848 (first citing *Gibson v. Trant*, 58 S.W.3d 103, 113 (Tenn. 2001), then *Standefer v. United States*, 447 U.S. 10, 23 n.18 (1980)).

In *Mullins v. State*, a civil case, our supreme court set forth a five-part test for the application of the collateral estoppel doctrine. *Mullins*, 294 S.W.3d at 535. The party invoking collateral estoppel must demonstrate

> (1) that the issue to be precluded is identical to an issue decided in an earlier proceeding, (2) that the issue to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding, (3) that the judgment in the earlier proceeding has become final, (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding, and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded.

*Id*. (citing *Gibson*, 58 S.W.3d at 118 (Birch, J., concurring and dissenting).

In determining whether collateral estoppel precludes relitigation of an issue, the court "must first identify the legal or factual issues that were decided in the earlier proceeding." *Id.* at 536. The court then must identify the issues that the party is seeking to preclude in the current proceeding. *Id.* Finally, the court must determine whether those issues are the same. *Id.* The issues that the party seeks to preclude from relitigation in the current proceeding "must be identical, not merely similar, to the . . . issues decided in the earlier proceeding." *Id.* (citing *Patton v. Est. of Upchurch*, 242 S.W.3d 781, 787 (Tenn. Ct. App. 2007)). Furthermore, "in order for the doctrine of collateral estoppel to apply, the issue must not only have been actually litigated and decided, it must also have been necessary to the judgment." *Id.* at 535 (citing *Thompson*, 285 S.W.3d at 848; *Dickerson v. Godfrey*, 825 S.W.2d 692, 695 (Tenn. 1992)). "Determinations of an issue or issues that are not necessary to a judgment have the characteristics of dicta and will not be given preclusive effect." *Id.* (citing Restatement (Second) of Judgments § 27 cmt. h (1982)).

The two general categories of collateral estoppel are (1) defensive collateral estoppel in which "a defendant seek[s] to prevent a plaintiff from relitigating an issue that

the plaintiff has previously litigated and lost" and (2) offensive collateral estoppel in which "a plaintiff attempt[s] to prevent a defendant from relitigating an issue that the defendant has previously litigated and lost." *Bowen ex rel Doe*, 502 S.W.3d at 107-08. In 2016, our supreme court abandoned the strict mutuality requirement where both parties had been parties or in privity with parties in the prior proceeding. *See id*. at 108, 115. The court adopted the approach of section 29 of the Restatement (Second) of Judgments, which examines whether "the party against whom collateral estoppel is asserted lacked a full and fair opportunity to litigate the issue in the first action or some other circumstance justifies affording that party an opportunity to relitigate the issue." *Id.* at 115-16 (quoting *Bernard v. Bank of Am. Nat. Trust & Savings Ass'n*, 122 P.2d 892, 894 (Cal. 1942)). The court also adopted section 85 of the Restatement (Second) of Judgments, "which allowed for offensive collateral estoppel in a civil action based on a prior criminal judgment." *Emergency Med. Care Facilities, P.C.*, 715 S.W.3d at 286 (citing *Bowen ex rel. Doe*, 502 S.W.3d at 116).

## II. Application of Collateral Estoppel to Criminal Cases

The United States Supreme Court recognized collateral estoppel as part of federal criminal law in 1916. *See United States v. Oppenheimer*, 242 U.S. 85, 87 (1916). In 1970, the Court recognized the application of collateral estoppel in criminal law as "embodied in the Fifth Amendment guarantee against double jeopardy." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970). The Court in *Ashe* "defined collateral estoppel to mean that when an issue of fact has been determined by a valid and final judgment, it may not be litigated by the same parties in any future litigation." *Thompson*, 285 S.W.3d at 847 (citing *Ashe*, 397 U.S. at 443). The record in the prior adjudication must be carefully scrutinized to determine "whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe*, 397 U.S. at 444 (footnote omitted). In determining whether collateral estoppel applies, a court must consider "the indictment and pleadings, the evidence, the instructions to the jury, and any other relevant matter 'in a practical frame and viewed with an eye to all the circumstances of the proceedings.'" *Thompson*, 285 S.W.3d at 848 (quoting *Ashe*, 397 U.S. at 444). The party seeking to invoke collateral estoppel has the burden of establishing that "a specific point at issue has been previously and finally decided." *Id.* (first citing *United States v. Bailey*, 34 F.3d 683, 688 (8th Cir. 1994), then *United States v. Vaughn*, 80 F.3d 549, 551 (D.C. Cir. 1996)).

In Tennessee, the doctrine of collateral estoppel has "been recognized as a part of our criminal jurisprudence for a relatively short period of time." *Id*. at 848-49 (citing *State v. McKennon*, 6 S.W.3d 508, 511 (Tenn. Crim. App. 1998); *State v. Vickers*, 985 S.W.2d 1, 7 (Tenn. Crim. App. 1997); *State v. Allen*, 752 S.W.2d 515 (Tenn. Crim. App. 1988)). This court has recognized that collateral estoppel may be used by a criminal defendant but

that collateral estoppel may not be used by the State "as an offensive weapon against the defendant in a criminal case." *Id.* at 849 (citing *United States v. Smith-Baltiher*, 424 F.3d 913, 920 (9th Cir. 2005)). In distinguishing between the "offensive" use of collateral estoppel and its use as a defense to a criminal charge, our supreme court held that a defendant's "right to a jury embodies the entitlement 'to have every fact tried and determined by twelve jurors and to have all issues of fact submitted to the same jury at the same time,'" which "trumps policy considerations for finality and consistency in a criminal proceeding when the prosecution asserts its application." *Id.* (quoting *State v. Scarbrough*, 181 S.W.3d 650, 655 (Tenn. 2005)). However, collateral estoppel may be applied by a defendant in the defense of a criminal case as the part of the "guarantee against double jeopardy." *Scarbrough*, 181 S.W.3d at 655 (quoting *Ashe*, 397 U.S. at 445).

### III. Application of the Collateral Estoppel Doctrine to a Subsequent Criminal Action Based on a Prior Decision in a Civil Proceeding

The criminal court applied the collateral estoppel doctrine to Defendant's criminal DUI case based on the circuit court's findings related to the implied consent violation. The violation of the implied consent law "does not constitute a criminal offense," and the revocation of the driver's license as a result of the violation "confers only an administrative penalty." *State v. Collins*, 166 S.W.3d 721, 727 (Tenn. 2005) (citing *State v. Turner*, 913 S.W.2d 158, 163 (Tenn. 1995)); *see also* Tenn. Code Ann. § 55-10-407(a) (2019) (providing that if the court finds that the driver violated the implied consent statute, "the driver is not considered as having committed a criminal offense"); *State v. Pinchak*, 277 S.W.3d 912, 916 (Tenn. Crim. App. 2005) (recognizing that the defendant's violation of the implied consent law "is not a criminal offense" but is "a civil offense imposing an 'administrative penalty'"). Thus, we must determine whether the doctrine of collateral estoppel applies to Defendant's criminal DUI prosecution based upon the circuit court's findings pertaining to the civil violation.

On appeal, both the State and Defendant apply the five-part test set forth in *Mullins* to support their respective positions regarding the application of the collateral estoppel doctrine in the instant case. *See Mullins*, 294 S.W.3d at 535. Our supreme court has applied this five-part test in determining whether collateral estoppel bars litigation of an issue during a civil proceeding when the issue was decided during a prior civil proceeding. *See Emergency Med. Care Facilities, P.C.*, 715 S.W.3d at 285, 288-92; *In re: Justice*, 628 S.W.3d 279, 285 (Tenn. 2021); *Mullins*, 294 S.W.3d at 535. Our supreme court also has applied this five-part test in determining whether a defendant convicted of a criminal offense is collaterally estoppel in a subsequent civil lawsuit filed by the victim from relitigating an issue decided in the prior criminal proceeding. *See Bowen ex rel Doe*, 502 S.W.3d at 107.

Our supreme court has not applied this five-part test to determine whether collateral estoppel as embodied in the constitutional guarantee against double jeopardy bars litigation in a criminal proceeding of an issue decided in a prior criminal proceeding. Rather, our supreme court and this court have applied the United States Supreme Court's opinion in *Ashe* and its progeny and the general principles governing the constitutional prohibition against double jeopardy to determine whether a party is estopped from relitigating an issue in a subsequent criminal proceeding that was decided in a prior criminal proceeding. *See, e.g., Thompson*, 285 S.W.3d at 850-54; *State v. Huskey*, 66 S.W.3d 905, 926-30 (Tenn. Crim. App. 2001); *McKennon*, 6 S.W.3d at 510-12; *Allen*, 752 S.W.2d at 516.

Our supreme court also has not addressed the collateral estoppel standards applicable in determining the preclusive effect of an issue raised in a criminal prosecution that had been decided in a prior civil proceeding. Defendant makes a passing reference in his brief to the principle in *Ashe* that the application of collateral estoppel in criminal law is "embodied in the Fifth Amendment guarantee against double jeopardy." *Ashe*, 397 U.S. at 443. However, neither the State nor Defendant rely upon the application of *Ashe* and its progeny on appeal, and neither party asserts a constitutional basis for the application of the collateral estoppel doctrine in the instant case.

Other jurisdictions have held that the constitutional basis for collateral estoppel under the Double Jeopardy Clause set forth in *Ashe* did not prohibit relitigation of an issue in a criminal proceeding that had been previously decided in a prior civil proceeding. *See State v. Walker*, 768 P.2d 668, 670 (Ariz. App. 1989); *State v. Guzman*, 874 P.2d 1117, 1120 (Idaho Ct. App. 1993); *State v. Cassady*, 662 A.2d 955, 958 (N.H. 1995); *State v. Krueger*, 12 P.3d 53, 55 (Or. App. 2000). These jurisdictions reasoned that because the defendant had not been placed in jeopardy as a result of the initial civil proceeding, collateral estoppel based on double jeopardy principles did not bar relitigation of the issue in the subsequent criminal proceeding. *See Walker*, 768 P.2d at 670; *Guzman*, 874 P.2d at 1120; *Cassady*, 662 A.2d at 958; *Krueger*, 12 P.3d at 55.

Rather, these jurisdictions have applied what has been referred to as "common law" collateral estoppel standards, which include principles similar to those embodied in the five-part test set forth in *Mullins*, to determine the preclusive effect of an issue raised in a criminal prosecution that had been decided in a prior civil proceeding. *See Walker*, 768 P.2d at 670-73 (holding that the adjudication of a civil traffic violation favorable to the defendant did not have preclusive effect under the common law collateral estoppel standards in a subsequent criminal prosecution of felony charges arriving out of the same traffic occurrence); *Guzman*, 874 P.2d at 1119-21 (holding that the conclusion during a license suspension hearing that the defendant had not been driving was not entitled to collateral estoppel effect in the subsequent DUI prosecution under the common law collateral estoppel standards); *Cassady*, 662 A.2d at 957-58 (concluding that the collateral

- 10 -

estoppel doctrine under common law did not preclude the State from relitigating in a DUI prosecution issues of fact decided in the defendant's favor during a prior civil administrative driver's license suspension hearing); *Krueger*, 12 P.3d at 55-57 (concluding that the collateral estoppel doctrine under the common law did not preclude the State from relitigating in a DUI prosecution the validity of a traffic stop previously decided in the defendant's favor by a circuit court during a prior civil appeal of an administrative order suspending the defendant's license); *see also People v. Flynn*, 554 N.E.2d 668, 669-71 (Ill. App. 1990) (holding that the collateral estoppel doctrine did not apply to preclude the State from litigating the validity of the breathalyzer results at a DUI trial although the breathalyzer results were found to be inadmissible in a prior summary suspension hearing); *People v. Zitka*, 922 N.W.2d 696, 700-02 (Mich. App. 2018) (concluding that the circuit court's dismissal of a civil nuisance-abatement action based on the defendants' unlawful gambling activities at their businesses did not collaterally estop the State from prosecuting the defendants on criminal charges related to the activities). Moreover, this court has recognized that "[c]ollateral estoppel applies in criminal proceedings independent of double jeopardy principles, and one need not be twice placed in jeopardy of criminal punishment for collateral estoppel to apply." *Craigmire v. State*, No. 03C01-9710-CR-00440, 1999 WL 508445, at *4 (Tenn. Crim. App. July 20, 1999) (quoting 50 C.J.S. Judgments § 919(a) (1997)).

This court has addressed the effect of collateral estoppel regarding findings in a civil proceeding on a subsequent criminal proceeding in *State v. Hameed* and *State v. Pursell*. *See State v. Hameed*, No. M2009-00152-CCA-R9-CD, 2010 WL 3582485, at *5 (Tenn. Crim. App. Sept. 15, 2010); *State v. Pursell*, No. M2008-01625-CCA-R3-CD, 2009 WL 2216562, at *3 (Tenn. Crim. App. July 23, 2009). Both cases addressed whether the collateral estoppel doctrine barred relitigation in a subsequent criminal trial of factual findings made in a juvenile dependency and neglect proceeding that were favorable to the defendant. *See Hameed*, 2010 WL 3582485, at *5; *Pursell*, 2009 WL 2216562, at *4.

In *Pursell*, this court examined the application of the collateral estoppel doctrine, "as encompassed by double jeopardy principles." *Pursell*, 2009 WL 2216562, at *3. We set forth the collateral estoppel doctrine as defined by the Supreme Court in *Ashe*. *See id.* (quoting *Ashe*, 397 U.S. at 445). We also cited to the principles of collateral estoppel summarized by our supreme court in civil cases. *See id.* (first quoting *Massengill v. Scott*, 738 S.W.2d 629, 631-32 (Tenn. 1987), and then *Gibson v. Trant*, 58 S.W.3d 103, 113 (Tenn. 2001)). We concluded that the collateral estoppel doctrine did not bar the subsequent criminal proceedings due to the differences between the purposes and goals in the civil and criminal proceedings and the importance of preserving the criminal trial process. *Id.* at *6. We also "emphasize[d] that, in the juvenile court proceeding, the [d]efendant was not being prosecuted for a crime; her freedom was not in jeopardy." *Id.*

In *Hameed*, this court applied the reasoning in *Pursell* in concluding that the doctrine of collateral estoppel did not apply to criminal proceedings on charges of aggravated child abuse and aggravated child neglect based on the findings favorable to the defendant in the prior juvenile dependency and neglect proceedings involving the same victim. *See Hameed*, 2010 WL 3582485, at *7-11. We quoted the standard and principles of collateral estoppel set forth in *Pursell*. *See id*. at *7 (citing *Pursell*, 2009 WL 2216562, at *3-4). The defendant in *Hameed* relied upon the five-part test for the application of collateral estoppel that both parties rely upon in this appeal. *See id*. at *9. However, we determined that the application of the five-part test was unnecessary in light of this court's decision in *Pursell*. *Id*. We determined that collateral estoppel did not apply because the issue litigated and decided on the merits in the juvenile court of whether the victim was a "dependent and neglected child" who needed the State's protection differed from the issue of whether the defendant committed the criminal offenses of aggravated child abuse and aggravated child neglect in the criminal proceedings. *Id*. at *9-10. We concluded that because the issue in the juvenile proceedings differed from the issue in the criminal proceedings, the State did not have "a full and fair opportunity to litigate in the juvenile proceeding whether [the defendant] was guilty beyond a reasonable doubt of committing the criminal offenses." *Id*. at *11.

### IV. Application of Collateral Estoppel to Defendant's DUI Charge

In the instant case, we conclude that Defendant has failed to establish that the collateral estoppel doctrine applies to the DUI prosecution regardless of whether we apply the five-part test set forth in *Mullins* or the reasoning set forth in our opinions in *Pursell* and *Hameed*. The circuit court's granting of Defendant's motion for summary judgment was based on the implied consent provisions in Tennessee Code Annotated section 55-10-406, which at the time of the offenses provided in pertinent part:

(a) A law enforcement officer who has probable cause to believe that the operator of a motor vehicle is driving while under the influence of any intoxicant, controlled substance, controlled substance analogue, drug, substance affecting the central nervous system, or combination thereof as prohibited by § 55-10-401 . . . may request that the operator of the vehicle submit to a test or tests for the purpose of determining the alcohol or drug content, or both, of that operator's blood.

. . . .

(d)(1) The operator of a motor vehicle in this state is deemed to have given implied consent to breath tests, blood tests, or both tests, for the purpose of determining the alcohol or drug content of that operator's blood. However,

- 12 -

no such test may be administered pursuant to this section unless conducted at the direction of a law enforcement officer having probable cause to believe the operator was in violation of one (1) or more of the offenses set out in subsection (a) and the operator signs a standardized waiver developed by the department of safety and made available to law enforcement agencies.

Tenn. Code Ann. § 55-10-406(a), (d)(1) (2019). "Except as may be required by a search warrant or other court order, if the operator is placed under arrest, requested by a law enforcement officer to submit to breath tests, or both tests, advised of the consequences for refusing to do so, and refuses to submit, the operator shall be charged with violating subsection (d)(1)." *Id.* § 55-10-406(d)(4) (2019). A violation of the implied consent provisions in Code section 55-10-406 results in the revocation of the license of the driver. *Id.* § 55-10-407(a) (2019).

The circuit court found that the evidence failed to establish that the officer had probable cause to believe that Defendant was driving under the influence when the officer requested that Defendant submit a blood sample. The circuit court found that the evidence failed to establish probable cause to believe that Defendant was driving or in physical control of a motor vehicle. The circuit court cited to our supreme court's opinion in *State v. Lawrence*, in which the court adopted a totality of the circumstances test for purposes of determining whether a person was driving or in physical control of a motor vehicle and identified the following factors that the trier of fact should consider:

the location of the defendant in relation to the vehicle, the whereabouts of the ignition key, whether the motor was running, the defendant's ability, but for his intoxication, to direct the use or non-use of the vehicle, or the extent to which the vehicle itself is capable of being operated or moved under its own power or otherwise.

*Lawrence*, 849 S.W.2d at 765.

The circuit court's ruling reversed the general sessions court's finding that Defendant violated the implied consent provisions. Its ruling was based on its analysis of the implied consent statutory provisions in Code section 55-10-406 and was limited on the face of the order to Defendant's implied consent violation. Conversely, the criminal court found that the State was collaterally estopped from relitigating the issue of whether the evidence established probable cause to believe that Defendant was driving under the influence. On appeal to this court, Defendant argues that the criminal court's ruling pertains to both the grand jury's finding of probable cause in returning an indictment for DUI and whether there was probable cause to arrest Defendant for DUI. We note that the

- 13 -

issue before this court is not whether the circuit court's ruling is correct but whether the circuit court's ruling should collaterally estop Defendant's DUI prosecution.

### A. Grand Jury's Probable Cause Determination

Defendant contends that based on the circuit court's ruling the collateral estoppel doctrine applies to the grand jury's indictment charging Defendant with DUI. However, this is illogical because the grand jury returned the indictment charging Defendant with DUI more than one year *before* the circuit court entered its order on the implied consent violation. Defendant has cited no authority allowing a grand jury's probable cause determination to be revisited based on a subsequent ruling in a civil proceeding. To allow such a challenge would ignore established precedent that prohibits a court from going "behind an indictment to inquire into the evidence considered by the grand jury to determine whether it was in whole or in part competent and legal." *State v. Dixon*, 880 S.W.2d 696, 700 (Tenn. Crim. App. 1992) (quoting *McGee v. State*, 451 S.W.2d 709, 712-13 (Tenn. Crim. App. 1969)). "[W]e are not permitted to review the grand jury's deliberation processes, whether to evaluate its findings or to determine what evidence it may have considered." *State v. Jackson*, No. E2022-01384-CCA-R3-CD, 2024 WL 4441507, at *29 (Tenn. Crim. App. Oct. 8, 2024) (citing *State v. Carruthers*, 35 S.W.3d 516, 532-33 (Tenn. 2000); *State v. Welch*, 586 S.W.3d 399, 403-04 (Tenn. Crim. App. 2019)), *perm. app. denied* (Tenn. Mar. 12, 2025). "The grand jury gets to say—without any review, oversight, or second-guessing—whether probable cause exists to think that a person committed a crime." *Id.* (quoting *Kaley v. United States*, 571 U.S. 320, 328 (2014)). We conclude that because the grand jury returned the indictment against Defendant before the circuit court's ruling and in light of established precedent prohibiting courts from reevaluating a grand jury's probable cause determination, Defendant failed to establish that the collateral estoppel doctrine applies to the grand jury's probable cause determination.

### B. Probable Cause for Arrest for DUI

Defendant also argues that the circuit court's ruling collaterally estops the State from litigating whether the officer had probable cause to arrest Defendant for DUI. Our supreme court has defined the probable cause necessary to believe a person was driving under the influence as provided in Code section 55-10-406 as consistent with the probable cause necessary for an arrest. *See State v. Reynolds*, 504 S.W.3d 283, 301 (Tenn. 2016) (addressing whether probable cause under the implied consent statutory provisions had been established and providing that probable cause exists when "the facts and circumstances within the knowledge of the officers, and of which they had reasonably trustworthy information, are sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense"); *State v. Echols*, 382 S.W.3d 266, 277-78 (Tenn. 2012) (using the same definition for probable cause for an arrest).

However, the summary judgment procedure employed by the circuit court, the available proof, the limitations on the admissibility of the proof, and the remedy imposed by the circuit court in adjudicating the issue of probable cause under the implied consent provisions in Code section 55-10-406 greatly differ from those utilized in litigating the issue of probable cause to arrest in a criminal prosecution.

The circuit court did not rely on the live testimony of witnesses in issuing its ruling but, instead, relied on the transcript of the preliminary hearing. The circuit court issued its ruling based on the standard for summary judgment provided in Tennessee Rules of Civil Procedure 56.01 through 56.08. The circuit court declined to consider Officer Perocchi's affidavit submitted by the State because the affidavit did not state that it was filed "on personal knowledge" and did not set forth facts "as would be admissible in evidence" in accordance with Tennessee Rule of Civil Procedure 56.06. The circuit court found that the officer's affidavit referenced information provided by the convenience store clerk as to how Defendant's vehicle was found or came to be found in the parking lot and that the clerk's opinion as to the driver's status was inadmissible hearsay pursuant to Tennessee Rule of Evidence 801. The circuit court seemed to have considered the probable cause provisions in Code section 55-10-406 as an element of the civil offense of the implied consent violation in granting Defendant's motion for summary judgment. *Cf. State v. Freeman*, 402 S.W.3d 643, 653 (Tenn. Ct. App. 2012) (holding that "reasonable grounds" or probable cause is "not an element of the offense" of violation of the implied consent law) (quoting *State v. Prater*, No. M2009-00527-CCA-R3-CD, 2010 WL 4674288, at *4 (Tenn. Crim. App. Nov. 16, 2010)).

In contrast, probable cause is not an element of the criminal offense of DUI. *See* Tenn. Code Ann. § 55-10-401. Rather, probable cause for an arrest is addressed as part of the determination of the constitutionality of a warrantless arrest under the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution. *See State v. Dotson*, 450 S.W.3d 1, 49-50 (Tenn. 2014); *Echols*, 382 S.W.3d at 277-78. Although a warrantless search and seizure is presumed unreasonable, an arrest supported by probable cause is an exception to the warrant requirement. *See Dotson*, 450 S.W.3d at 50; *Echols*, 382 S.W.3d at 277-78. In a criminal case, the constitutional validity of a warrantless arrest and the existence of probable cause to support that arrest are litigated prior to trial in a motion to suppress evidence obtained as a result of the arrest. *See State v. Ochab*, No. M2015-02290-CCA-R3-CD, 2016 WL 6247429, at *4-5 (Tenn. Crim. App. Oct. 26, 2016) (providing that the remedy for an illegal arrest is the suppression of evidence obtained as a result of the arrest); *see also* Tenn. R. Crim. P. 12(b)(2)(C) (listing a motion to suppress as a motion that must be made prior to trial).

Furthermore, the quantum of proof upon which a court may consider in deciding the issue of probable cause for an arrest during a suppression hearing in a criminal case is more

expansive than the proof that the circuit court found that it could consider under the summary judgment standards. While the circuit court found that the information supplied to the officer from the convenience store clerk was inadmissible hearsay that could not be considered for summary judgment, our supreme court has recognized that an officer may rely upon information received from an ordinary citizen in determining whether the totality of the circumstances establishes probable cause for an arrest. *See Dotson*, 450 S.W.3d at 51; *Echols*, 382 S.W.3d at 279. Such information provided by a citizen informant is presumed to be reliable. *Dotson*, 450 S.W.3d at 51; *Echols*, 382 S.W.3d at 279.

Finally, the remedy provided by the circuit court in the civil proceeding is very different from the remedy afforded to a defendant in a criminal case as the result of an illegal arrest. Unlike the civil proceeding in which the circuit court seemed to have treated probable cause as an element of the implied consent violation in Code section 55-10-406 in granting Defendant's motion for summary judgment, the proper remedy for an unlawful arrest in a criminal proceeding is not the dismissal of the indictment. *State v. Baker*, 966 S.W.2d 429, 432 (Tenn. Crim. App. 1997); *State v. Childs*, No. M2022-01685-CCA-R3-CD, 2023 WL 7321165, at *3 (Tenn. Crim. App. Nov. 7, 2023); *Ochab*, 2016 WL 6247429, at *4. Rather, the appropriate remedy for an illegal arrest is the suppression of any evidence obtained as a result of the arrest. *Baker*, 966 S.W.2d at 432; *Childs*, 2023 WL 7321165, at *3; *Ochab*, 2016 WL 6247429, at *4. "When no evidence emanates from an illegal arrest, the arrest is essentially inconsequential in the criminal justice arena." *Ochab*, 2016 WL 6247429, at *4. Defendant did not file a motion to suppress in the criminal proceeding and did not otherwise challenge any evidence obtained as a result of the arrest.

Other jurisdictions have cited to the disparity in the proof and procedures employed in the different proceedings to conclude that the collateral estoppel doctrine did not apply to a subsequent criminal proceeding based on a decision reached in a prior civil or administrative proceeding. *See Walker*, 768 P.2d at 671-73; *Guzman*, 874 P.2d at 1120-21; *Flynn*, 554 N.E.2d at 669-71; *Cassady*, 662 A.2d at 958; *Krueger*, 12 P.3d at 55-57. Additionally, regarding the collateral estoppel doctrine in general, the United States Supreme Court has recognized that "[r]edetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 481 (1982) (quoting *Montena v. United States*, 440 U.S. 147 (1979)).

Here, there were differences between the quality and extensiveness of the two proceedings, including the differences in the available remedies. As such, we conclude that the State did not have a full and fair opportunity to litigate in the circuit court the constitutional validity of the officer's warrantless arrest of Defendant and whether any evidence should be suppressed as a result of any illegal arrest. *See Mullins*, 294 S.W.3d at 535 (providing that a party invoking collateral estoppel must demonstrate that "the party

against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded"); *Hameed*, 2010 WL 3582485, at \*11 (declining to apply the collateral estoppel doctrine in a criminal proceeding based on a decision reached in a prior related juvenile proceeding when the State did not have "a full and fair opportunity to litigate in the juvenile proceeding whether [the defendant] was guilty beyond a reasonable doubt of committing the criminal offenses"). Accordingly, we conclude that Defendant failed to establish that the collateral estoppel doctrine applied to the DUI prosecution based on the circuit court's findings in the civil implied consent proceedings. The criminal court erred in determining otherwise and in granting Defendant's motion to dismiss the indictment.[4]

## Conclusion

We conclude that the criminal court erred in finding that the doctrine of collateral estoppel applied and in dismissing the indictment. Accordingly, we reverse the criminal court's dismissal of the indictment, reinstate the indictment, and remand to the criminal court for further proceedings consistent with this opinion.



s/ Matthew J. Wilson
MATTHEW J. WILSON, JUDGE

---

[4] We note that in its order granting summary judgment, the circuit court also made findings related to the State's reliance on the community caretaking doctrine set forth in *State v. McCormick*, 494 S.W.3d 673 (Tenn. 2016), in Officer Perocchi's approaching the vehicle in which Defendant was passed out and initiating contact with Defendant. The circuit court "concede[d] that the [o]fficer's initial actions may have been proper under the community caretaker exception" but found that "[o]nce Officer Perocchi engaged medical personnel for determination of a medical emergency, the community caretaker exception terminated." Defendant did not seek application of the collateral estoppel doctrine in his motion to dismiss filed in the criminal court; the criminal court did not find that the collateral estoppel doctrine applied to this finding; and neither party raises an issue regarding the applicability of the collateral estoppel doctrine to this finding by the circuit court on appeal. Furthermore, we note that the circuit court did not grant summary judgment and dismiss the implied consent violation based on this finding. Because the circuit court's finding regarding the community caretaking doctrine was not necessary to its judgment in granting Defendant's motion for summary judgment, the collateral estoppel doctrine does not apply to this finding by the circuit court. *See Mullins*, 294 S.W.3d at 535 (providing that determinations of an issue must have been necessary to the judgment for collateral estoppel to apply and that "[d]eterminations of an issue or issues that are not necessary to a judgment have the characteristics of dicta and will not be given preclusive effect").